IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN CHECCHIA, on behalf of himself and all others similarly situated, | : : : : : : : : : : : : | Civil Action<br><br>No. 21-3585 |
| Plaintiff, | | |
| v. | | |
| BANK OF AMERICA, N.A., | | |
| Defendant. | | |

## MEMORANDUM

**SURRICK, J.**                                                                                                                          **February 16, 2023**

      Presently before the Court is Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Class. (ECF No. 17.) For the following reasons, Plaintiff's Motion will be granted and the Court will schedule a Fairness Hearing.

**I.**     **BACKGROUND**

    **A.**     **Background Litigation**

      In this class action, Plaintiff Steven Checchia brings claims on behalf of himself and others similarly situated against Defendant Bank of America, N.A. (BANA). Plaintiff alleges that BANA breached its account agreements, violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1-1, *et seq.*, and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, by charging NSF Fees and OD Fees on checks that were re-presented for payment after having initially been returned for non-sufficient funds.

BANA removed the case to this Court on August 11, 2021.  (Notice of Removal by Bank of America, N.A.; ECF No. 1).  The Parties extended the deadlines for BANA to respond to Plaintiff's complaint and for Plaintiff to file a motion to remand to participate in an early mediation and engaged in informal discovery, including data analysis that now forms the basis of the proposed class settlement.  Following discovery, the Parties mediated the matter before Judge Diane M. Welsh on February 18, 2022, and agreed on settlement terms.  The parties filed a notice of settlement on March 11, 2022, (ECF No. 11), and this Court directed Plaintiff to file the instant Motion for Preliminary Approval.  (*Id.*).

**B.     Settlement Agreement**

Under the proposed Settlement Agreement, BANA agrees to (1) pay a total amount of $8,000,000 into a settlement fund and (2) continue to not assess the disputed fees for at least five years.  (Settlement Agreement and Release at ¶¶ 1.36, 1.47, 2.1, 6.1.)  The Settlement Fund will be distributed to the Settlement Class—those who paid and were not refunded an NSF Fee and/or OD Fee in certain situations from May 19, 2017 through the preliminary approval date—and used to pay for settlement administration costs, attorney's fees and potential costs awarded to class counsel, and any service award this Court might award to the class representative.  (*Id.* at ¶¶ 1.13, 3.1, 6.3, 6.6, 7.)  Payments to Settlement Class Members will be made proportionately based on BANA's data on who was assessed the fees.  (*Id.* at 7.1.)  Any excess funds remaining after 240 days will be distributed to those Settlement Class Members who cashed their initial settlement checks or received a credit to their accounts.  (*Id.* at 6.7.)  Any remaining funds will be distributed to a consumer protection or financial services organization with no reversion to BANA.  (*Id.* at ¶ 7.4.)

The Settlement Administrator will be Epiq Class Action & Claims Solutions, Inc.  Notice shall be provided (1) by email to current accountholders who have agreed to receive emails from BANA, (2) by postcard to current accountholders who have not agreed to receive emails from BANA, current accountholders who cannot be reached by email, and former accountholders, and (3) by long form notice on the settlement website and sent by mail to those who request it.  (*Id.* at ¶ 5.2.)  Every form of notice will include the material settlement terms, the opt-out deadline, the objection deadline, the Final Fairness Hearing date and time, and the settlement website address.  (*Id.*, Exhibits 1-3.)

Settlement Class Members may opt-out of or object to the settlement up to 30 days before the Final Fairness Hearing.  (*Id.* at ¶¶ 1.30, 9.1, 9.4.)  Objections must include grounds for the objection, any counsel for the objector, and any previous objections made by the objector or the objector's counsel.  (*Id.* at ¶ 9.4.1.)

BANA agrees to Class Counsel's application for attorneys' fees and costs up to $2,666,666.66.  (*Id.* at ¶ 10.1.)  BANA also does not oppose a request for a $5,000 service award for the Class Representative.  (*Id.* at ¶ 11.1.)  However, this Court's decision not to award either attorneys' fees or a service award would not prevent the Settlement from becoming effective.  (*Id.* at ¶ 8.1).

## II.     LEGAL STANDARD

Review of a proposed class action settlement proceeds in two steps:  preliminary approval and a subsequent fairness hearing.  *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 574 (3d Cir. 2014).  "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998).  The court's

approval should not be construed as a commitment to approve the final settlement. *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008). However, preliminary approval of a proposed class action settlement "establishes an initial presumption of fairness . . . ." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (citation omitted).

During preliminary review, counsel submit the proposed terms to the court, and the court makes a preliminary fairness finding. *In re Nat'l Football League*, 775 F.3d at 581. A court's decision to preliminarily approve a proposed class action settlement "is a determination that there are no obvious deficiencies and the settlement falls within the range of reason." *Gates*, 248 F.R.D. at 438 (E.D. Pa. 2008) (citation omitted). In making that determination, the court considers whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litigation*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003) (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 785–86 (3d Cir.1995).)[1]

In addition to reviewing the terms of settlement, a court at the preliminary approval stage may conditionally certify the class for purposes of providing notice, with the final certification decision to be made at the subsequent fairness hearing. *In re Nat'l Football League Players' Concussion Injury Litigation*, 301 F.R.D. 191, 199-200 (E.D. Pa. 2014). To do so, the court must

---

[1] These factors are distinct from the nine-factor test adopted by the Third Circuit to ultimately approve settlements as fair, reasonable, and adequate under Rule 23(e). *See Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). "At the preliminary approval stage . . . the Court need not address these factors, as the standard for preliminary approval is far less demanding." *Gates,* 248 F.R.D. at 444 n.7.

4

determine whether the proposed Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23. When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citations omitted). However, even at the preliminary approval stage, the court must determine whether the proposed class satisfied the requirements of Federal Rule of Civil Procedure 23(a). Rule 23(a) requires a class representative to demonstrate "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Nat'l Football League,* 301 F.R.D. at 200.

      Additionally, under Rule 23(b)(3), a class can be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The elements of Rule 23(b)(3) are known as the predominance and superiority requirements respectively, and consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). The Third Circuit has also held that a class certified under Rule 23(b)(3) must be "ascertainable," meaning "(1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for

determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (3d Cir. 2015) (internal quotation marks omitted).

Finally, a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). For Rule 23(b)(3) classes, class members must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must clearly convey in plain language certain material information about the class proceedings as listed in Rule 23(c)(2)(B)(i)-(vii).

### III. DISCUSSION

#### A. Preliminary Approval of the Settlement Terms

After review of the proposed Settlement Agreement and Notice of Pending Class Action, we are satisfied that the proposed settlement meets the criteria for preliminary approval. In the preliminary approval phase, we are tasked only with determining whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League*, 301 F.R.D. at 198. The proposed settlement at issue here does not raise any doubts as to fairness, or otherwise reveal any deficiencies, as it was the product of arms-length negotiation by experienced counsel who have reached the settlement after extensive litigation and discovery. *See In re Linerboard*, 292 F.Supp.2d at 638.

First, there is nothing to indicate that the proposed settlement is not the result of good faith, arms-length negotiations. In his declaration, counsel for Plaintiff, Jeff Ostrow, Esq., stated that discovery and data analysis lasted months and "was the subject of intensive discussion and

negotiations between the Parties and numerous alterations and amendments to the analysis occurred during this process." (Ostrow Decl., ¶ 20.) In addition, settlement in this case was aided by a mediator, which is compelling evidence that vigorous and arms-length negotiations occurred. *See, e.g. In re Nat'l Football League*, 301 F.R.D. at 198-99 (finding good faith, arms-length negotiations where the parties were guided by a mediator); *Gates,* 248 F.R.D. at 444 (same).

Secondly, counsel in this case has extensive experience in class action litigation, including in cases specifically concerning NSF and OD fees. (Ostrow Decl. ¶ 35, Exhibits 1-3). This case is unique in that it follows *Morris et al v. Bank of America, N.A.*, No. 3:18-CV-157-RJC-DSC (W.D.N.C), which concerned whether BANA was authorized to assess multiple NSF and/or OD fees on electronic payments re-presented having been initially returned for insufficient funds. Class counsel for the instant matter also litigated *Morris*, and therefore not only has general class action experience but also the benefit of litigating similar issues in that prior case, which included "tens of thousands of pages of documents and relevant information" and "internal documents related to BANA's NSF Fee and OD Fee practices including Account agreements, marketing and internal studies on NSF/OD Fees, customer complaints about the challenged fees, and transactional database excerpts showing how much money BANA made from the challenged fees." (Mot. for Prelim. App., at 4.)

Similar discovery took place in this case. Specifically, "the Parties engaged in an extensive informal discovery effort that included a data analysis that lasted months. The analysis was the subject of intensive discussion and negotiation between the Parties and numerous alterations and amendments to the analysis occurred during this process." (*Id.* at 5) (citations

7

omitted). We find this discovery, combined with the information gathered from *Morris*, to sufficiently satisfy the standards of preliminary approval.

The last element we must consider is whether "only a small fraction of the class objected." *In re Linerboard*, 292 F.Supp.2d at 638. As of the writing of this opinion, no class members have yet objected. Therefore, all the elements having been met, we will preliminarily approve this class settlement, which requires the parties to give notice to class members regarding their ability to opt-out or object should they chose to do so.

### B.     Preliminary Class Certification

In addition to preliminarily approving the class settlement, we may also conditionally certify the class at the preliminary approval phase. To do so, we must find pursuant to Federal Rule of Civil Procedure 23(a) that the class is suitably numerous, there are questions of law and fact common to the class, Plaintiffs claims are typical of the class, and Plaintiff will adequately represent the entire class. Additionally, Rule 23(b)(3) requires that common issues predominate over any individual claims, that a class action is the superior method of adjudication, and that the proposed class is ascertainable. Finally, potential class members must be sufficiently notified of the material terms of the settlement agreement. We find that Plaintiff has met these elements and that the notification plan is sound and will therefore conditionally certify the class.

#### 1.     *The Requirements of Rule 23(a)*

In order to certify a class, Rule 23(a) requires the class representative to demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Nat'l Football League,* 301 F.R.D. at 200.

8

BANA does not oppose certification, and we find that Plaintiff's proposed class meets these elements.

(i) Numerosity

While there is no minimum number of plaintiffs required to satisfy the numerosity requirement, it is generally understood that a potential number of plaintiffs greater than 40 is enough to maintain a class action. *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001). Here, class counsel estimates that "the Settlement Class consists of hundreds of thousands of current and former BANA Accountholders," (Mot. for Prelim. App., at 19), easily satisfying the numerosity requirement.

(ii) Commonality

The commonality element requires that "the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527-28 (3d Cir. 2004). This question of fact or law must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Nat'l Football League*, 301 F.R.D. at 200 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2014)).

Plaintiff alleges here that "[t]here are multiple questions of law and fact – centering on BANA's charging of Class Fees and whether such fees were authorized by binding contract documents – that are common to the Settlement Class, that are alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial." (Mot. for Prelim. App., at 19-20.) We agree. It is clear that whether BANA charged fees to the class members, and was authorized

9

to do so, is a common question of law and fact between them. Indeed, this Court has previously found that the "common course of conduct" stemming from assessed banking fees satisfies the commonality requirement. *See Krimes v. JPMorgan Chase Bank, N.A.*, 2016 WL 6276440, at *4 (E.D. Pa. 2016) ("Each class member could access their funds upon release only through a BOP debit card. Each was also subject to the same fees Chase charged in connection with the cards. Also, Chase's principal defenses, such as government immunity, are common to all class members.").

      (iii)  Typicality

  The class representative's claims must be "typical" of the claims of the class, meaning that "the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *In re National Football League,* 301 F.R.D. at 200 (quoting *Baby Neal v. Casey,* 43 F.3d 48, 57-58 (3d. Cir. 1994)). "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal,* 43 F.3d at 57. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirements irrespective of the varying fact patterns underlying the individual claims." *Id.* at 58.

  Plaintiff's claim here is "based on the same legal theories . . . and arise[s] from the same alleged wrongful conduct," *In re National Football League,* 301 F.R.D. at 201, as the claims of the putative class. Indeed, it seems that Plaintiff's interests are perfectly aligned with those of the other class members, and we can envision no circumstance where "the legal theories of the

named plaintiffs potentially conflict with those of the absentees . . . ." *Baby Neal,* 43 F.3d at 57. Furthermore, any minor factual differences, if they exist, in how the class members were assessed the disputed fees pale in comparison to "relatively pronounced factual differences" in other cases which still did not preclude a finding of typicality. *See id.* at 58 (citing *De La Fuentes v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Plaintiffs claim is typical of the class.

                (iv)    Adequacy of Representation

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class the seek to represent." *Windsor,* 521 U.S. at 625. To assess the adequacy of the class representative, courts first inquire into the "qualifications of counsel to represent the class," and second, assess whether there are "conflicts of interest between named parties and the class they seek to represent." *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 312 (3d Cir. 1998).

As discussed above, class counsel is more than qualified to represent the class. (*See* Ostrow Decl. ¶ 35, Exhibit 1-3.) In addition, Plaintiff's claim is purely coextensive with those of the proposed class, who have equal interest in the relief offered by the Settlement Agreement. This Court concludes that there are no conflicts of interests between the named parties and the class members.

        2.    *The Requirements of Rule 23(b)(3)*

In addition to satisfying the requirements of Rule 23(a), a class representative must also meet one of the requirements of Rule 23(b). These include, *inter alia*, that "the court finds that the questions of law or fact common to class members predominate over any questions affecting

11

only individual members, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor,* 521 U.S. at 623. The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Warfarin,* 391 F.3d at 533-34.

Plaintiff here satisfies the predominance inquiry because questions of law and fact common to the settlement class substantially outweigh any individual issues. The claims of all the class members are based on the same legal theories and uniform conduct of BANA, and it is difficult to imagine any individual issues that would outweigh these common claims. In addition, resolution of these claims in a class action is superior to individual lawsuits because it promotes consistency and efficiency of litigation. It is also the only feasible way for many class members to litigate their presumably relatively small claims. *See Krimes,* 2016 WL 6276440, at *5 ("since the individual claims are relatively small, without the class, individuals might lack incentive to pursue their claims.").

The Third Circuit also requires that a class certified under Rule 23(b)(3) be ascertainable. "The ascertainability requirement is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd,* 784 F.3d at 163. We are satisfied that the proposed method of using BANA business records to identify those who were assessed fees during the Class Period is a suitably objective, reliable, and feasible method of determining the class in this case. We therefore find that the class meets all requirements of Rule 23(b)(3).

12

### C. Approval of the Notice Plan

Rule 23(e) of the Federal Rules of Civil Procedure provides that a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), such as this proposed class, class membered must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, due process requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re National Football League,* 301 F.R.D. at 202 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). To that end, "the notice must clearly and concisely state in plain, easily understood language:"

> (i) the nature of the action;
>
> (ii) the definition of the class certified:
>
> (iii) the class claims, issues, and defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The parties have proposed several forms of notice in their motion, including (1) emails to current accountholders who have agreed to receive emails from BANA, (2) postcards to current accountholders who have not agreed to receive emails from BANA, current accountholders who cannot be reached by email, and former accountholders, and (3) long form notice on the settlement website and sent by mail to those who request it.  (Settlement Agreement and Release, at ¶¶ 5.2.1, 5.2.2.)  We find that these methods of notice are "reasonably calculated" to notify all class members identified through BANA's business records.  Moreover, having reviewed the proposed notices, we conclude that they satisfy the requirements of Rule 23(c)(2)(B).

### IV. CONCLUSION

The proposed settlement is the product of good-faith negotiation by experienced counsel with the help of a mediator after extensive litigation and discovery.  Moreover, the proposed class meets all requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3), and the parties' notice plan is reasonably calculated to provide notice to the prospective class.  Accordingly, Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Class is granted.  A Fairness Hearing is scheduled for July 24, 2023

An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**