**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

STEVEN CHECCHIA, on behalf of himself
and all other similarly situated,

                Plaintiff                        CASE NO. 2:21-cv-3585

v.

BANK OF AMERICA, N.A.,

                Defendant
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS SETTLEMENT, APPLICATION FOR**
**SERVICE AWARD, ATTORNEYS' FEES, AND COSTS,**
**AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................2

    A.   Factual Background and Procedural History ....................................................2

    B.   Summary of the Settlement Terms ...................................................................3

        1.   Settlement Consideration ..........................................................................3

        2.   The Settlement Class.................................................................................4

        3.   Settlement Administrator and Notice Plan ...............................................4

        4.   Release ......................................................................................................5

        5.   Opt-Outs and Objections...........................................................................5

        6.   Service Award ...........................................................................................6

        7.   Attorneys' Fees and Costs ........................................................................6

III.   ARGUMENT ..........................................................................................................6

    A.   The Court Should Grant Final Approval to the Settlement ..............................6

        1.   Rule 23(e)(2)(A): The Class Representative and Class Counsel Adequately Represent the Settlement Class .................................................................8

        2.   Rule 23(e)(2)(B): This Settlement is the Product of Arm's Length Negotiations.........9

        3.   Rule 23(e)(2)(C): The Relief Provided to the Settlement Class is Adequate ..............10

        4.   Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably ........14

    B.   Certification of the Settlement Class is Appropriate ........................................14

    C.   Notice to Class Members Was Adequate and Satisfies the Requirements of Rule 23 and Due Process ................................................................................18

    D.   The Service Award, Attorneys' Fees, and Costs are Reasonable .....................19

        1.   The Requested Service Award is Reasonable.............................................19

        2.   The Attorneys' Fees Should Be Awarded According to the Percentage-of-Recovery Method ...................................................................................20

a.  The size of the fund and the number of persons benefitted ....................................21

b.  The presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel ...............................22

c.  The skill and efficiency of the attorneys involved ................................................22

d.  The complexity and duration of the litigation .........................................................24

e.  The risk of nonpayment ...........................................................................................24

f.  The amount of time devoted to the case by counsel ...............................................25

g.  Awards in similar cases ...........................................................................................26

3.  Class Counsel's Litigation Costs Incurred are Reasonable and Should Be Reimbursed from the Common Fund .......................................................................28

IV.    CONCLUSION ................................................................................................................29

I.      **INTRODUCTION**

Plaintiff[1] respectfully moves for Final Approval of the Settlement Agreement and Release, attached as ***Exhibit A***, which will resolve all claims against BANA. Final Approval should be granted because the Settlement provides substantial relief for the Settlement Class, including an $8,000,000.00 cash Settlement Fund and millions of dollars of savings resulting from the Practice Change. Due to their efforts, Plaintiff and Class Counsel respectfully apply for a $5,000.00 Service Award to Plaintiff for serving as the Class Representative, awards to Class Counsel for $2,666,666.66 for attorneys' fees and $8,187.35 for litigation costs, and approval of the payment of Settlement Administration Costs. The Settlement terms are well within the range of reasonableness and granting Final Approval will be consistent with applicable law.

Pursuant to the Court's Preliminary Approval Order, Class Notice was sent to Settlement Class members to notify them of the proposed Settlement, as well as CAFA Notice to the Attorney General of the U.S. and the Attorneys General of each of the 50 states, as well as all other required recipients. ECF No. 18. Thus far, the results are overwhelmingly positive. Not a single member of the Settlement Class objects in any respect to the Settlement, and only two have opted-out. Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, at ¶ 47; *See* Declaration of Cameron R. Azari ("Azari Decl."), attached as ***Exhibit C***, at ¶ 33. Updated statistics will be provided to the Court following the Opt-Out Deadline and Objection Deadline and before the Final Approval Hearing.

The Settlement in this novel case—which follows and significantly adds to an earlier, similar case litigated by Class Counsel in *Morris et al. v. Bank of America, N.A.*, No. 3:18-CV-157-RJC-DSC (W.D.N.C.)—provides substantial benefits to the Settlement Class. If approved, the Settlement will include BANA's cash payment of $8,000,000.00 into a common fund. Further, after the initiation of this Action, BANA ceased the practice at the heart of this Action, which involved charging more than one fee on a check that is re-presented for payment. In connection

---

[1] All capitalized terms used herein shall have those same meanings as those defined in Section I of the Settlement Agreement.

therewith, BANA has committed to not re-establishing the practice for at least five years. BANA is one of the first major U.S. banks to do so. This Practice Change is estimated to result in over $20 million in savings for the Settlement Class and future Accountholders. Thus, the total value of the Settlement is even more significant when considering both the Settlement Amount and the value of the Practice Change. *See* Joint Decl. ¶ 35; Settlement Agreement ¶ 1.36.

One of the Settlement's keystones is that Settlement Class Members will automatically receive their *pro rata* share of the Net Settlement Fund without having to complete and submit claim forms, and they will not be asked to prove they were damaged. Instead, the Parties and the Settlement Administrator will use available bank data that confirms which BANA checking and savings Accountholders were affected by the challenged practice, and thereafter, apply a simple formula to calculate each Settlement Class Member's *pro rata* share of the Net Settlement Fund.

As detailed in this Motion below, the Settlement easily satisfies all the criteria for Final Approval and the award of attorneys' fees and costs to Class Counsel and a Service Award to the Class Representative. Accordingly, Plaintiff respectfully requests entry of a Final Approval Order: (1) granting Final Approval to the Settlement; (2) certifying the Settlement Class for settlement purposes, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award the Plaintiff $5,000.00 for serving as Class Representative; (6) award Class Counsel attorneys' fees in the amount of $2,666,666.66 and litigation costs in the amount of $8,187.35; (7) approve payment of the Settlement Administration Costs out of the Settlement Fund; and (8) enter Final Judgment dismissing the Action and reserving jurisdiction over the Settlement implementation.

## II.    STATEMENT OF FACTS

### A.  Factual Background and Procedural History

The history of this Action is fully set forth in Plaintiff's Motion for Preliminary Approval. *See* ECF No. 17. For the purposes of efficiency, Plaintiff incorporates by reference the Motion's Factual Background section. The Court granted the Plaintiff's Motion for Preliminary Approval

of the Settlement on February 16, 2023. *See* Memorandum (ECF No. 19); Order Preliminarily Approving Class Settlement and Conditionally Certifying Class for Settlement Purposes (ECF No. 20) (collectively, Preliminary Approval Order). The Court, *inter alia*: (1) preliminarily approved the Settlement as fair, reasonable, and adequate; (2) conditionally certified the Settlement Class; (3) appointed Class Counsel and Plaintiff as Class Representative; (4) approved the Notice Plan and Class Notice; and (5) scheduled a Final Approval Hearing. *Id.*

**B.  Summary of the Settlement Terms.**

**1.  Settlement Consideration**

Under the Settlement Agreement, BANA has agreed to: (1) make a cash payment into a Settlement Fund of $8,000,000.00; and (2) cease assessing Class Fees for a period of at least five years. Agreement ¶¶ 1.36, 1.47, 2.1, 6.1. The Settlement Fund will be used to pay Settlement Class Member Payments, Settlement Administration Costs, any Attorneys' Fees and Costs awarded to Class Counsel, and any Service Award awarded to the Class Representative. *Id.* ¶ 6.3.

The Settlement Fund will be distributed to Settlement Class Members according to the Agreement's distribution plan. *Id.* ¶¶ 6.6, 7. Importantly, Settlement Class Members do not need to submit a claim form to receive payment, as the Net Settlement Amount will be distributed *pro rata* using BANA's data to determine the Settlement Class Member Payment amount. *Id.* ¶ 7.1; Joint Decl. ¶ 55. Current Accountholders who are Settlement Class Members will receive direct deposit credits to their Accounts, and Past Accountholders will be mailed a paper check. Agreement. ¶ 6.6.2.2.

After the initial distributions, any excess funds remaining from the Settlement Amount shall, if economically feasible, be distributed *pro rata* to the Settlement Class Members who successfully cashed checks or received Account credits. *Id.* ¶ 6.7. If a second distribution of remaining funds costs more than the amount to be distributed or is otherwise economically unfeasible, or if additional funds remain after a second distribution, Class Counsel shall petition the Court to distribute any remaining funds to a consumer protection or financial services organization as a *cy pres* recipient. *Id.* There will be no reversion to BANA. *Id.* ¶ 7.4.

## 2. The Settlement Class

The proposed Settlement Class is defined as the following:

> All Accountholders of BANA consumer checking and/or savings accounts in the United States who, during the Class Period, paid and were not refunded a NSF Fee and/or OD Fee in connection with (a) an ACH entry on their Account that was submitted by the merchant or the merchant's bank with a "REDEP CHECK" indicator or (b) a physical check (not an ACH transaction) that was re-presented for payment after having initially been returned for non-sufficient funds and charged an NSF Fee within the preceding 28 calendar days.

> Excluded from the Settlement Class is BANA, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to opt-out, and all judges assigned to this litigation and their immediate family members.

*Id.* ¶ 3.1. The Class Period is May 19, 2017 through February 16, 2023. *Id.* ¶ 1.13.

## 3. Settlement Administrator and Notice Plan

Following Preliminary Approval, the Settlement Administrator completed the Notice Plan set forth in the Agreement. *See generally* Azari Decl. The Notice Plan was designed to reach as many Settlement Class members as practicable. *Id.* ¶17. The Class Notice included the required description of the material Settlement terms; the Opt-Out Deadline for Settlement Class members to opt-out of the Settlement Class; the Objection Deadline by which Settlement Class Members may object to the Settlement; the Final Approval Hearing date and time; and the Settlement Website address at which Settlement Class members may access the Long Form Notice, Settlement Agreement, and other related documents and information. Agreement ¶ 1.12; Azari Decl. at Attachments 3-5.

Specifically, on March 9, 2023, the Settlement Administrator received a data file with 361,993 Account records, which included contact information for identified Settlement Class members, including names, mailing addresses, email addresses, and account information. Azari Decl. ¶23. The Settlement Administrator used these records to identify 359,775 unique Settlement Class members records (of these records, 1,527 records had no physical mail or email address that was mailable). *Id.* As a result, 358,248 unique, identified Settlement Class members were sent notice; 137,760 were sent an Email Notice, and 222,124 were sent a Postcard Notice. *Id.* ¶ 24.

Further, on May 5, 2023, the Settlement Administrator established an informational Settlement Website, www.NSFODFeeCheckSettlement.com, allowing Settlement Class members to obtain detailed information about the Action, the Settlement, and to review important documents, including the Long Form Notice, Settlement Agreement, Preliminary Approval Order, Memorandum Opinion in Support of Preliminary Approval Order, Motion for Preliminary Approval, and Complaint. *Id.* ¶ 30. This Motion will also be posted to the website. As of June 7, 2023, there have been 41,865 unique visitor sessions to the Settlement Website, and 59,978 web pages have been presented. *Id.* Also on May 5, 2023, the Settlement Administrator established a toll-free telephone number (888-771-2047) to allow Settlement Class members to call for additional information, listen to answers to FAQs, and to request a Long Form Notice be mailed to them. *Id.* ¶ 31. This automated phone system is available 24 hours per day, 7 days per week. *Id.* The toll-free telephone number was prominently displayed in all notice documents. *Id.* As of June 7, 2023, there have been 7,241 calls to the toll-free telephone number representing 16,605 minutes of use. *Id.*

As a result of the Notice Plan, at least 90% of the identifiable Settlement Class members received direct notice of the Settlement. *Id.* ¶ 35. The Class Notice here was the best notice practicable under the circumstances and fully complied with all requirements of due process under the United States Constitution. *Id.* ¶¶ 35-37.

### 4. Release

The Release is narrowly tailored to claims raised in the Complaint. As of the Effective Date of the Settlement, the Plaintiff and each Settlement Class Member will release the Released Claims identified in Section 13 of the Agreement.

### 5. Opt-Outs and Objections

The Class Notice informed Settlement Class members of their right to opt-out or object to the Settlement. Azari Decl. at Attachments 3-5. In addition to advising of the Settlement terms, the Notices also informed Settlement Class members of the amount of attorneys' fees and Service Award that Class Counsel was seeking, as well as that Settlement Administration Costs and

litigation costs will be deducted from the Settlement Fund. *Id*. The Opt-Out Deadline and Objection Deadline is June 24, 2023, 30 days before the Final Approval Hearing and after the filing of the Motion for Final Approval. ECF No. 20, ¶ 10. As of June 7, 2023, there are only two opt-outs and not a single objection to the Settlement. Azari Decl. ¶ 33. This information will be updated before the Final Approval Hearing.

### 6. Service Award

Class Counsel requests a $5,000.00 Service Award for Plaintiff. Mr. Checchia was integral to bringing this Action and to obtaining the Settlement for the Settlement Class and contributed significantly to its prosecution. BANA does not oppose the Service Award.

### 7. Attorneys' Fees and Costs

Class Counsel requests $2,666,666.66 for attorneys' fees, representing 33.33% of the cash Settlement Amount, $8,187.35 for litigation costs, and a $5,000.00 Service Award for Plaintiff, as well as approval of the payment of Settlement Administration Costs. Class Counsel has not been paid for their efforts or reimbursed for litigation costs incurred, having accepted the representation of the Plaintiff and putative Class on a contingent fee basis. Joint Decl. ¶¶ 60-61. Moreover, the attorneys' fees requested do not take into account the approximately $20,000,000.00 in savings related to BANA's agreement to cease charging Class Fees. BANA does not oppose these requests.

## III.    ARGUMENT

### A.    The Court Should Grant Final Approval to the Settlement.

Under Rule 23, a settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Third Circuit's traditional nine-factor class settlement fairness and reasonableness standard, as originally articulated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), is:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (alterations omitted) (*quoting City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974)); *In re Pet Food Products Liab. Litig*., 629 F.3d 333, 350 (3d Cir. 2010). The Court must make findings regarding the *Girsh* factors where appropriate. *Id*.

"The settling parties bear the burden of proving that the *Girsh* factors weigh in favor of approval of the settlement." *Id*. (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 785 (3d Cir. 1995)). Further, the Third Circuit has reaffirmed the "overriding public interest in settling class action litigation." *Id*. at 351 (*quoting In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir.2004). *See also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir.2010) (noting the "especially strong" presumption in favor of voluntary settlements in "'class actions . . . where substantial judicial resources can be conserved by avoiding formal litigation'.") The 2018 amendments to Rule 23(e) also formalize a list of core considerations for settlement approval which overlap with the *Girsh* factors such as: (1) whether class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). Furthermore, the Court's Preliminary Approval Order "establishes an initial presumption of fairness . . . ." ECF No. 19 at *4 quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 785 (3d Cir. 1995)

The relevant *Girsh* factors support Final Approval. Plaintiff structures the arguments below to track the elements specified in Rule 23(e)(2), and in doing so establishes that the considerations in *Girsh* are met. The Class Representative and Class Counsel adequately represent the Settlement Class. The Settlement was reached through well-informed, arm's length negotiations by competent and experienced counsel with an experienced mediator's assistance. Joint Decl. ¶¶ 13-17. The Settlement is reasonable and provides excellent relief for the Settlement Class. A review of the fairness, adequacy, and reasonableness factors demonstrates the Settlement fits well within the range of reasonableness, such that Final Approval is warranted. Finally, all Settlement Class Members are treated equitably relative to each other.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this Action proceeded to trial. BANA argues that Plaintiff's claims are unfounded, denies any potential liability, and in the previous case, and up to the point of settlement here, has indicated a willingness to litigate those claims vigorously. The Parties concluded that the benefits of settlement in this case outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and final appellate review. *Id.* ¶ 39.

### 1. Rule 23(e)(2)(A): The Class Representative and Class Counsel Adequately Represent the Settlement Class.

Plaintiff's interests are coextensive with, and not antagonistic to, the Settlement Class' interests, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff is represented by qualified and competent counsel. Class Counsel possess extensive experience in prosecuting class actions, including cases involving bank NSF Fees and OD Fees, in courts throughout the United States, and have recovered hundreds of millions of dollars for the classes they have represented. *Id.* ¶ 53 and Exhibits 1-3 thereto. Class Counsel devoted substantial time and resources investigating and prosecuting this Action and have and will vigorously protect the Settlement Class's interests. *Id.* ¶ 31.

As a result of arm's length and good faith negotiations, the Parties reached a Settlement that Class Counsel believes, based on extensive experience litigating similar class actions like this one, to be fair, reasonable, and in the Settlement Class members' best interests. *Id.* ¶¶ 16, 36. Class Counsel's assessment is entitled to considerable deference. *See e.g. In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997), *aff'd*, 148 F.3d 283, 311 (3d Cir. 1998).[2] "Significant weight" should be given "to the belief of experienced counsel that settlement

---

[2] *See also Callahan v. Commonwealth Land Title Ins. Co.*, 1990 WL 168273, at *16 (E.D. Pa. Oct. 29, 1990) ("a court should refrain from merely substituting its own judgment of the merits of a

is in the best interest of the class, so long as the Court is satisfied that the settlement is the product of good faith, arms-length negotiations." *In re American Family Enterprises*, 256 B.R. 377, 421 (D.N.J. 2000); *see also Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 414 (E.D. Pa. 2010).

### 2.    Rule 23(e)(2)(B): This Settlement Is the Product of Arm's Length Negotiations.

The Settlement is the result of intensive, arm's length negotiations between experienced attorneys, aided by a well-respected mediator (Judge Diane M. Welsh (ret.)), who are familiar with class action litigation and with the Action's legal and factual issues, including from the *Morris* litigation. An independent neutral's participation in negotiating a class action settlement is considered when evaluating arm's length negotiations. *In re National Football League Players' Concussion Injury Litigation*, No. 2:12-02323, 301 F.R.D. 191, 198-9 (E.D. Pa. 2014). The negotiations did not begin in earnest until an extensive data analysis was requested, completed, and evaluated by Class Counsel in this case. Joint Decl. ¶ 14. As the Preliminary Approval Order recognized, "there is nothing to indicate that the proposed settlement is not the result of good faith, arms-length negotiations." ECF No. 19 at p. 6.

In negotiating this Settlement in particular, Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims and BANA's defenses having the benefit of years of experience in litigating bank fee class actions across the country involving similar claims, and a familiarity with BANA's practices at issue in *Morris* and other cases against BANA. Joint Decl. ¶¶ 12, 20 and Exhibits 1-3 thereto. As Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and engaged in sufficient informal discovery. *Id.* ¶¶ 7-10, 14; ECF No. 19 at pp. 7-8. Class Counsel consulted with a preeminent bank fee data expert to understand the data BANA produced and BANA's damages exposure. Joint Decl. ¶14.

---

settlement for that of counsel intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses"); *Daniel B. v. O'Bannon*, 633 F. Supp. 919, 926 (E.D. Pa. 1986) ("the professional judgment of counsel involved in the litigation is entitled to significant weight"). Recommendations of experienced counsel are entitled to great weight in evaluating a proposed class action settlement.

Analysis of data provided concerning the challenged fees charged to Settlement Class members enabled an understanding of the evidence related to central questions in the Action, and prepared Class Counsel for well-informed settlement negotiations at mediation. *Id.*

### 3. Rule 23(e)(2(C): The Relief Provided to the Settlement Class Is Adequate.

Review of the Rule 23(e)(2)(C) factors (and in conjunction *Girsh* factors 4-6 and 8-9) supports a determination that this Settlement is fair, adequate, and reasonable. Undoubtedly this Settlement is a fair and reasonable recovery for the Settlement Class in light of BANA's defenses and the challenging and unpredictable litigation path Plaintiff would have faced absent a settlement.

On this point, the reaction of the class to the settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989). Here, "the reaction of the Class to the Settlement weighs in favor of approving the Settlement." *In re Nat. Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 389 (E.D. Pa. 2015), *amended sub nom. In re Nat'l Football League Players' Concussion Injury Litig.*, 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015). To date, the Settlement Administrator has received two timely opt-out requests and no objections. Azari Decl. ¶ 33.

The complete lack of objections, along with only two opt-outs relative to the size of the Settlement Class consisting of approximately 360,000 members, supports Final Approval:

> "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *Gen. Motors*, 55 F.3d at 812. Considering this factor from a somewhat different angle, the Third Circuit Court of Appeals has recognized the practical conclusion that it is generally appropriate to assume that "silence constitutes tacit consent to the agreement" in the class settlement context. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir.1993). By using these considerations as a gauge of class reaction to the Moark Settlement, the Court determines that the class reaction here favors settlement. Indeed, there were no objections filed to the Settlement and thus no negative feedback to the settlement.

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 269 (E.D. Pa. 2012). As such, the "utter absence of objections from the class . . . militates strongly in favor of approval of the

settlement." *Sala*, 721 F. Supp. at 83.

Plaintiff and Class Counsel are confident in the strength of their case, but they are also pragmatic in their awareness of the various defenses available to BANA, and the risks inherent to litigation. Joint Decl. ¶¶ 39-40, 43-45. As another court examining an overdraft fee settlement noted: "The combined risks here were real and potentially catastrophic. . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011). The same is true here.

A major risk is that the Court or a jury might find BANA's Account agreement language permits defenses that the contract permitted BANA to charge the challenged Class Fees, and that BANA sufficiently disclosed its multiple fee practice for checks that were re-presented such that those practices were not deceptive or misleading. Joint Decl. ¶ 40. Indeed, a number of courts across the country have dismissed similar claims at the pleadings stage.[3] Also, because BANA's practices regarding Class Fees had been in place for many years, the Settlement Class (and the Class Representative) faced potential statute of limitations, estoppel, and waiver defenses, among other affirmative defenses that would be pled. *Id.* ¶ 43. In addition, BANA would have asserted numerous defenses to class certification that raise substantial litigation risks. *Id.* Each of these risks, by itself, could easily have impeded Plaintiff's and the Settlement Class' successful prosecution of these claims at trial and in an eventual appeal. Under the circumstances, Plaintiff and Class Counsel appropriately determined the Settlement promptly reached with BANA outweighs the gamble of continued litigation. *Id.*

Moreover, even if Plaintiff prevailed at trial, any recovery could be delayed for years by

---

[3] *See, e.g., Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019); *Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020); *Toth v. Scott Credit Union*, No. 20-CV-00306-SPM, 2021 WL 535549 (S.D. Ill. Feb. 12, 2021), *reconsideration denied*, No. 19-CV-5965, 2021 WL 1546437 (N.D. Ill. Apr. 20, 2021); *Ross v. NavyArmy Cmty. Credit Union*, No. 2:21-cv-168, 2022 WL 100110 (S.D. Tex. Jan. 11, 2022) (same).

an appeal. *See Rivera v. Lebanon School Dist.*, No. 1:11-00147, 2013 WL 4498817 (M.D. Pa. Aug. 20, 2013) (noting appeal "could have delayed reimbursement to class members, as well as jeopardized their eventual recovery"); *Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" settlement approval). This Settlement provides substantial relief to the Settlement Class without further delay.

The claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in the sister *Morris* case, which was hard fought for years, with numerous depositions, third party discovery, and hundreds of thousands of pages of documents produced. Joint Decl. ¶ 41. There is no doubt that continued litigation here would be difficult, expensive, and time-consuming. *Id.* The risks and obstacles in this Action are just as great as those in other bank fee cases and this case would likely have taken years as well to successfully prosecute. *Id. See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial").

One of the most expensive aspects of ongoing litigation in this Action involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial. Joint Decl. ¶ 42. As was the case in *Morris*, Plaintiff would likely have to rely on a damages expert and experts in the fields of marketing and banking had the case proceeded to trial. *Id.* These considerations, and the other considerations noted above, militate heavily in favor of the Settlement. *Id. See also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

Courts have determined that settlements may be reasonable even where class members recover only part of their actual losses. *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) ("Even if the proposed settlement only amounts to 'a fraction of the potential

recovery,' it does not necessarily follow that the settlement 'is grossly inadequate and should be disapproved.'"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Here, Plaintiff's $8,000,000.00 cash recovery, plus the approximately $20,000,000 in future savings from the Practice Change, is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: motions to dismiss, for class certification, and for summary judgment; trial; and potential appeals. Based on extensive analysis of BANA's data in consultation with the bank data expert, Class Counsel estimates that the Settlement Class' most likely ceiling of recoverable damages at trial would have been approximately $20 million. Joint Decl. ¶ 34. Thus, the Settlement will result in the recovery of approximately 40% percent of the most probable damages, without further risks attendant to litigation. *Id.* That percentage recovery is on par with other bank fee settlements.[4] It is also substantially better than the typical recovery class actions for which systematic data exists, specifically, antitrust and securities fraud.  *See* John M. Connor & Robert H. Lande, Not Treble Damages: Cartel Recoveries are Mostly Less Than Single Damages, 100 Iowa L. Rev. 1997, 2010 (2015) (finding weighted average of recoveries—the authors' preferred measure—to be 19% of single damages for cartel cases between 1990 to 2014); Janeen McIntosh & Svetlana Starykh,

---

[4] *See Roberts v. Capital One, N.A.,* Case No. 1:16-cv-04841-LGS, 2020 (S.D.N.Y. Dec. 1, 2020) (approving a cash fund representing approximately 35% of relevant overdraft fees); *Bodnar v. Bank of Am., N.A.,* No. 14-3224, 2016 WL 4582084, at *4 (E.D. Pa. Aug. 4, 2016) (approving a cash fund of between 13%-48% of the maximum amount of damages that may have been secured at trial, and describing such a result as a "significant achievement" and outstanding); *In re Checking Account Overdraft Litig.*, No. l:09-MD-02036-JLK, 2015 WL 12641970, at *7 (S.D. Fla. May 22, 2015) (approving $31,767,200 settlement representing approximately 35% of most probable aggregate damages); *Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 WL 1927342, at *3 (N.D. Cal. Apr. 28, 2015) (approving $2,900,000 settlement for approximately 38% of what could have been obtained at trial); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319242, at *1 (S.D. Fla. Aug. 2, 2013) (approving $4,000,000 settlement for 25% of most probable recoverable damages); *Torres v. Bank of Am.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) ($410 million settlement that was between 9 to 45 percent of total potential damages); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 198 (D.D.C. 2011) (overdraft settlement with recovery range of 12 to 30 percent as "within the realm of reasonableness"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 583 (N.D. Ill. 2011) (settlement representing 10% of potential recovery).

Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review 20 (Jan. 25, 2021) (finding recoveries in securities class actions to vary between 1.6% and 2.5% of investor losses between 2012 and 2020).

The Settlement provides for a highly effective means of directly distributing the Net Settlement Fund *pro rata* to Settlement Class Members. This will be determined by the number of Class Fees that each Settlement Class Member was assessed, based on an analysis of reliable data provided from BANA's business records. Agreement ¶ 7.1.

Further, Class Counsel's request for an attorneys' fee award of 33.33% of the common cash fund is consistent with fee awards in this Circuit and in similar cases. *See* § III.D.2.g., *infra*.

Courts also consider whether there are additional agreements between the Parties outside of the settlement that could cast doubt on the fairness or adequacy of the settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv). The Settlement here "contains the Parties' entire agreement on and understanding of the subject-matter at issue in the Action," and "supersedes all prior negotiations and proposals, whether written or oral." Agreement ¶ 15.8.2.

### 4. Rule 23(e)(2)(D): The Settlement Treats Settlement Class Members Equitably.

The *pro rata* formula for distributing the Net Settlement Fund assures that all Settlement Class Members will be treated equitably. The distribution formula reflects that there are no subclasses, and no relevant differences between Settlement Class Members. *Id.* ¶ 7.1. All current and future BANA accountholders likewise benefit from the Practice Change required by the Settlement.

### B. Certification of the Settlement Class Is Appropriate.

The Court conditionally certified the Settlement Class at Preliminary Approval. ECF No. 20. There is no reason to deviate from that ruling, and Plaintiff respectfully requests that the Court finally certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For purposes of this Settlement, BANA does not oppose class

certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues, and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(a)(1) numerosity is easily satisfied because the Settlement Class consists of approximately 360,000 current and former BANA Accountholders, and joinder of all such persons is impracticable. Azari Decl. ¶ 23. *See Steward v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) ("No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceed 40, the first prong of Rule 23(a) has been met.").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The Third Circuit has held "commonality" may be satisfied by <u>one</u> common issue. *In re Warfarin Sodium Antitrust Litig*, 391 F.3d 516, 527 (3d Cir. 2004). Here, Rule 23(a)(2) commonality is readily satisfied. Multiple questions of law and fact – centering on BANA charging Class Fees and whether such fees were authorized by binding contract documents – are common to the Settlement Class, are alleged to have injured all Settlement Class Members in the same way, and would generate common answers central to the claims' viability were the Action to proceed to trial. Joint Decl. ¶50; ECF No. 19 at pp. 9-10.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of absent

Settlement Class Members, such that Rule 23(a)(3) typicality is satisfied. Joint Decl. ¶ 51. The typicality inquiry, a low threshold, is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). Typicality is satisfied where the class representative's claim arises from the same alleged wrongful conduct by the defendant. *In re Warfarin*, 391 F.3d at 532. Plaintiff and the Settlement Class were subjected to the same practice and claim to have suffered from the same injuries, and they will benefit equally from the Settlement relief. *Id.* at 531 ("The typicality requirement is 'designed to align the interests of the class and the class representatives so that the latter will work to the benefit of the entire class through the pursuit of their own goals.'").

Plaintiff and Class Counsel satisfy Rule 23(a)(4) adequacy of representation, which "serves to uncover conflicts of the interest between named parties and the class they seek to represent." *Amchem Products, Inc.*, 521 U.S. at 594. Adequacy is assessed by a two-prong test: (1) class counsel's qualifications and (2) whether there are conflicts of interest between the named plaintiff and the class. *In re Prudential*, 148 F.3d at 312. Both these components are satisfied, and the appointments should be confirmed for Plaintiff Steven Checchia as the Class Representative, and Jeff Ostrow and Jonathan M. Streisfeld of Kopelowitz Ostrow P.A., Jeffrey D. Kaliel of KalielGold PLLC, and Kenneth J. Grunfeld of Golomb Spirt Grunfeld, P.C. as Class Counsel. Class Counsel have worked to identify and investigate the claims, have the requisite experience in bank fee class actions, know the applicable law, and have the resources committed to represent the Settlement Class. Fed. R. Civ. P. 23(g). *See also* ECF No. 19 at p. 11; Joint Decl. ¶¶ 7-10, 31, 53. They have also worked diligently to represent the Settlement Class pursuant to the Preliminary Approval Order. *Id.* ¶ 31.

Rule 23(b)(3) certification of the Settlement Class is further proper because the predominance and superiority elements are readily met. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Ins.*

16

*Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (quoting *Amchem*, 521 U.S. at 623-24). Further, it assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3), Advisory Committee's Note to 1966 Amendment. Here, liability questions common to all Settlement Class Members substantially outweigh any possible individual issues affecting a Settlement Class Member. Joint Decl. ¶ 50. All of their relationships with BANA arise from materially identical Account agreements, and all Class Fees were for the same amount and were levied in the same circumstances. *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

Superiority "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 533-34 (internal quotation marks omitted). Rule 23(b)(3) identifies four superiority factors, the last of which is manageability, a matter of no concern with a settlement because there will be no trial. *Amchem Products, Inc.*, 51 U.S. at 620. Superiority is of no concern here because Accountholders have not shown an interest in controlling the prosecution of their claims, this being the only case to address the challenged Class Fees, and it is desirable to concentrate the litigation of these relatively small value individual claims in a single proceeding. Joint Decl. ¶ 54; ECF NO. 19 at p. 12.

Finally, the Third Circuit's ascertainability requirement, which requires a showing that the class is defined based on objective criteria, and that there is a reliable and administratively feasible mechanism to confirm that Settlement Class Members fall within the class definition, is definitely met in this Action. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). The Settlement Class Members are identifiable because they were assessed Class Fees during the Class Period, and readily available BANA business records allowed for the identification of the Settlement Class Members and direct distribution of Settlement Class Member Payments. Joint Decl. ¶ 55; ECF No. 19 at p. 12.

For these reasons, the Court should finally certify the Settlement Class.

**C. Notice to Class Members Was Adequate and Satisfies the Requirements of Rule 23 and Due Process.**

"The Notice Plan approved by this Court and carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Due process and Rule 23 require that Settlement Class Members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process are left to the Court's discretion, subject only to the broad reasonableness standards imposed by due process.

Here, following the Court's approval of the Notice Plan, the Settlement Administrator directed notice to the Settlement Class via direct mail and email. Azari Decl. ¶¶ 21-28. A Long Form Notice was also available for Settlement Class members who requested it, and it was posted on the Settlement Website. *Id.* ¶¶ 28-29. To ensure that Class Notice reached as many Settlement Class members as possible, the Settlement Administrator performed reasonable address checks for the initial Postcard Notice and Email Notice. *Id.* ¶¶ 27-28.

All of the notices included important information about the Settlement, including how to opt-out or object, and where to find more information about the Action or contact Class Counsel. Azari Decl. at Attachments 3-5. Additionally, the Class Notices were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class members. Azari Decl. ¶ 22. The design of the Class Notices followed principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov, and contain plain-language summaries of key information about Settlement Class members' rights and options. *Id*. As required by Rule 23(e), the Class Notices generally described the Settlement in sufficient detail to alert Settlement Class members to come forward to be heard, and Class Notices contained all of the critical information required to apprise Settlement Class members of their rights. *Id*. Thus, the Notice Plan is adequate and provided sufficient detail to allow Settlement Class members with adverse viewpoints to come forward and be heard.

The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).[5] Here, notice reached at least 90% of Settlement Class Members. Azari Decl. ¶ 35. The Class Notice to the Settlement Class here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements. *Id.*

### D.  The Service Award, Attorneys' Fees, and Costs are Reasonable.

Class Counsel respectfully request a $5,000.00 Service Award for the Class Representative, $2,666,666.66 for attorneys' fees (representing 33.33% of the cash Settlement Amount), $8,187.35 for litigation costs, and approval of payment of Settlement Administration Costs from the Settlement Fund. To date, Class Counsel has not been paid for their efforts or reimbursed for litigation costs incurred, having taken on this Action on a contingent fee basis. Moreover, the requested attorneys' fee amount does not account for the nearly $20,000,00.00 in estimated savings from the Practice Change. The Attorneys' Fees and Cost Award will serve to compensate Class Counsel for the time, risk, and expenses incurred to pursue the class claims and achieve the resulting Settlement.

#### 1.  The Requested Service Award Is Reasonable

Plaintiff requests, and BANA does not oppose, a Service Award for the Class Representative of $5,000.00. Service awards have been regularly approved by judges in this Circuit in cases such as this one where the class representative took a role in prosecuting the claims on behalf of the class. *See, e.g., In re Fasteners Antitrust Litig.*, CIV.A. 08-MD-1912, 2014 WL 296954, at *9 (E.D. Pa. Jan. 27, 2014) (Surrick, J.) (collecting cases). The requested award is reasonable and well-within the range of similar awards approved by this Court. *See, e.g., In re Automotive Refinishing Paint Antitrust Litigation*, 2008 WL 63269, at *7 (approving service awards in the amount of $15,000 to each of the four class representatives); *Barel v. Bank of Am.*, 255 F.R.D. 393, 403 (E.D. Pa. 2009) (Surrick, J.) (approving a $10,000 service award in a Fair

---

[5] This document is available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

Credit Reporting Act case); *In re Fasteners Antitrust Litig*., 2014 WL 296954, at \*9 (awarding $5,000 to each class representative "is perfectly reasonable"). Plaintiff amply fulfilled his duties as Class Representative, and the requested Service Award is appropriate.

The Class Representative took a risk, and provided a valuable public service, by putting himself forward as the representative of a class. He kept abreast of the case's status, reviewed documents provided by their counsel, and discussed with counsel various aspects of the case, including the Settlement. Joint Decl. ¶ 57. Additionally, the nature of Plaintiff's claims against BANA necessarily put his finances at issue and publicly disclosed his personal financial difficulties, creating notoriety regardless of the success of his claim. *Id*. ¶ 58. Had Plaintiff failed, he risked reputational harm. *Id*. Plaintiff should also be commended for taking action to protect the interests of the Settlement Class. It cannot be disputed that Plaintiff's efforts, and his willingness to stand up to a powerful adversary in BANA, resulted in the Settlement Class receiving significant financial benefits, making the Service Award requested appropriate and warranted.

## 2. The Attorneys' Fees Should Be Awarded According to the Percentage-of-Recovery Method

The requested attorneys' fees are appropriate under the applicable case law. "It is beyond dispute that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Myers v. Jani-King of Philadelphia, Inc.,* No. CV 09-1738, 2019 WL 4034736, at \*10 (E.D. Pa. Aug. 26, 2019) (Surrick, J.) (*quoting Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

In a case such as this, where class members recover from a single common fund, the Third Circuit favors the percentage-of-recovery method in evaluating the fairness of attorneys' fees. *In re Prudential Ins. Co*., 148 F.3d at 333 ("The percentage-of-recovery method is generally favored in cases involving a common fund and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (citation and internal quotation marks omitted)); *Graudins v. Kop Kilt, LLC*, No. CV 14-2589, 2017 WL 736684, at \*10

(E.D. Pa. Feb. 24, 2017) (Surrick, J.). In evaluating the fairness of the requested fees utilizing this method, the Court weighs the following seven factors:

> (1) the size of the fund and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*In re Rite Aid Corp. Sec. Litig*., 396 F.3d 294, 301 (3d Cir. 2005) (*citing Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 195 (3d Cir. 2000)). "These fee award factors need not be applied in a formulaic way and in certain cases, one factor may outweigh the rest." *Id*. Where an analysis of "[t]he *Gunter* factors raise no concerns," it is appropriate to award attorneys' fees based on a percentage-of-recovery. *Barel v. Bank of Am*., 255 F.R.D. 393, 404 (E.D. Pa. 2009) (Surrick, J.). Here, these factors favor approval.

### a. The size of the fund and the number of persons benefitted

Here, the Settlement that Class Counsel negotiated provides an excellent result for the Settlement Class. The $8,000,000.00 in cash represents 40% of the most likely ceiling of recoverable damages and provides immediate relief for approximately 360,000 Settlement Class Members. The Settlement affords relief without further risks attendant to litigation. *Id*. The percentage recovery is on par with other bank fee settlements. *See supra.* The Settlement provides for a highly effective means of directly distributing the Net Settlement Fund *pro rata* to the Settlement Class Members. The amount to which each Settlement Class Member is entitled shall be determined by the number of Class Fees that each Settlement Class Member paid and was not refunded, based on an analysis of reliable data provided from BANA's business records.

The significance of the Practice Change cannot be overstated. If its nearly $20,000,000 estimated value were considered by the Court, the attorneys' fee request would be an even lower percentage of the total benefits conferred on the Settlement Class. Even if not considered, the Practice Change is certainly a relevant factor in determining a reasonable percentage of the common fund to award. To incentivize class counsel to pursue meaningful practice changes, they

21

should be rewarded when they do so.  Courts have consistently recognized as much when evaluating the fairness of fee requests.  *See Farrell v. Bank of Am. Corp., N.A.,* 827 F. App'x 628, 631 (9th Cir. 2020) (overruling objector in part because the settlement included a practice change which generated benefits far "beyond the cash settlement fund."); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1049 (9th Cir. 2002) (discussing non-monetary benefits as partial justification for a larger fee award); *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 572 (D.S.C. 2015) (approving class counsel's request for 39.57% of the cash paid, where the "cash paid represents approximately 16.88% of the potential $2.24 million current and future value of the recovery"); *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 147 (E.D. Pa. 2000) (considering value of non-monetary benefits to class as supporting common fund fee award). Here, when considering the total value of the Settlement is $28,000,000 (cash plus Practice Change), the attorneys' fee request is actually only 9.5% of the benefits to the Settlement Class.

In short, the Settlement provides significant, direct benefits to Settlement Class and will continue to do so for at least five years. Consequently, Class Counsel's attorneys' fee request for 33.33% of the Settlement Fund is reasonable.

### b.  The presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel

As of the date of this filing, there are no objections to the Settlement, including the attorneys' fees requested. If objections are filed, Class Counsel will respond to them no later than 10 days before the Final Approval Hearing. ECF 20, ¶ 12. S*ee Graudins v. Kop Kilt, LLC*, No. CV 14-2589, 2017 WL 736684, at *10 (E.D. Pa. Feb. 24, 2017) (Surrick, J.) (where no class member objects to the settlement, "[t]his factor also weighs in favor of approving the requested fees.").

### c.  The skill and efficiency of the attorneys involved

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion*

*Mortg.*, No. 2:05-CV-1238(WHW), 2009 WL 1470429, at *11 (D.N.J. May 26, 2009). Class Counsel possess extensive knowledge of and experience in prosecuting class actions in courts throughout the country. Joint Decl. ¶¶ 2-6, 13, 53 and Exhibits 1-3 thereto. Class Counsel's experience, resources, and knowledge—especially in the specialized area of banking litigation— is extensive and formidable. *Id.* Indeed, there are few if any firms in the nation with this level of expertise. *Id.* Class Counsel has successfully litigated and resolved many other consumer class actions against major corporations, including those against dozens of financial institutions related to improper fee assessments, recovering hundreds of millions of dollars for those classes. *Id.*

Here, Class Counsel's combined expertise allowed it to build a novel case. *Id.* ¶¶ 7-10, 22. To even be able to identify the alleged inappropriate fees requires specialized knowledge and skill, as do the theories surrounding the alleged fees, not to mention the specialized knowledge of class action procedure required to achieve certification, let alone settlement. *Id.* Class Counsel leveraged that expertise to develop the entire theory of this unique case; litigate it; and negotiate a favorable settlement for the Settlement Class, which will also inure to the benefit of future BANA customers who are not members of the Settlement Class. *Id.* ¶ 13, 25. Without their innovation in developing the novel legal theory underlying this suit, the Settlement Class would have been left entirely without recompense or recourse.

The quality of opposing counsel is also relevant. *See In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2023 WL. 2530418, at *25 (E.D. Pa. Mar. 15, 2023). Here, BANA is represented by undeniably experienced and skilled attorneys at the nationally recognized law firm, McGuire Woods LLP. Settlement Class Counsel's ability to obtain a favorable outcome for the Settlement Class in the face of formidable legal opposition further confirms the quality of Settlement Class Counsel's representation and supports the reasonableness of the requested fee award.

Moreover, Class Counsel litigated this Action in an efficient manner. Based in no small part on their skill and expertise, Class Counsel were able to negotiate a Settlement prior to a ruling on (and potential appeals related to) class certification, allowing Settlement Class Members to receive their settlement benefits now—without the extensive delay entailed by pursuing this case

through judgment. The swift resolution of the case benefits the Settlement Class and emphasizes the skill and efficiency of Class Counsel. This factor also weighs in favor of approval of the requested fees.

### d. The complexity and duration of the litigation

This Action is unique because it is, in a sense, a continuation of the previous *Morris* litigation. When *Morris* was filed, it was the first of its kind. Since then, numerous other cases have been filed asserting a similar theory of liability, with mixed success. While most courts have denied motions to dismiss, like in *Morris*, a handful of others have granted motions to dismiss. *See footnote* 3, *supra*. While such dismissals at the pleading stage are in the minority, the existence of contrary authority demonstrates a real risk the Court could have dismissed the complaint or later entered summary judgment, or that a subsequent appeal would overturn any summary judgment denial, leaving class members without recompense. Class certification could be denied, or an interlocutory appeal could undo certification. Moreover, no similar case has ever been taken to trial, leaving the Court without a class certification trial plan roadmap.

Because of the continuously developing law around the theory of liability and the uncertainty that exists, Class Counsel needed a high degree of skill, both to settle the matter and to be prepared to litigate the merits through any potential appeal. Class Counsel's experience handling the most prominent bank fee cases and their fulsome understanding of the related legal issues helped them successfully advance this Action and procure a beneficial result for the Settlement Class. The complex nature of this case warrants approval of the requested fee award.

### e. The risk of nonpayment

Absent this Settlement, the Settlement Class and Class Counsel risked obtaining no recovery at all. The contingent nature of the Action therefore favors the award of fees. Here, "Class Counsel undertook this case on a purely contingent basis at significant risk." *In re Auto. Refinishing Paint Antitrust Litig*., No. MDL NO 1426, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) (Surrick, J.) (*citing O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003) ("Any contingency fee includes a risk of non-payment"). It is well-established that the "risk-

of-nonpayment" is a factor that weighs in favor of a percentage-of-recovery attorney fee award. *In re Diet Drugs*, 582 F.3d at 542. As discussed in Section III.A.3, *supra*, there was substantial risk associated with pursuing this theory of liability. As such, this factor warrants approval of the requested fee award.

### f.   The amount of time devoted to the case by counsel

The Court is not required to review counsel's lodestar to cross-check a requested fee amount and should not do so here. While the Third Circuit has "suggested that it is 'sensible' to do so," *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 305 (3d Cir. 2005), it is not mandatory. The Third Circuit has also recognized that "the lodestar cross-check is quite time consuming," and suggested that district courts "should first use" the traditional reasonableness factors to evaluate percentage fees. *In re Cendant Corp. Litig*., 264 F.3d 201, 220–21 (3d Cir. 2001). "[I]f the court cannot otherwise come to a resolution," then should it "consider a lodestar cross-check." *Id*. But, even if the lodestar cross-check is appropriate in some cases, it is particularly inapposite here: Class Counsel used their experience in litigating *Morris* and other similar cases to quickly persuade BANA that it was in the Parties' best interests to settle this case without delay, to the benefit of the Settlement Class which will receive immediate relief. In such a situation, applying a lodestar analysis would create a perverse incentive for counsel antagonistic to the class to litigate a case inefficiently. Thus, relevant here is what the Third Circuit recognized in *Gunter*:

> Commentators discussing fee awards have correctly noted that "one purpose of the percentage method" of awarding fees—rather than the lodestar method, which arguably encourages lawyers to run up their billable hours—"is to encourage early settlements by not penalizing efficient counsel…." MANUAL FOR COMPLEX LITIGATION, supra, § 24.121, at 207 (citing 3 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 14.03, at 14–3 to 14–7 (3d ed.1992)).

*Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 198 (3d Cir. 2000). Because this case represents precisely the situation where applying the lodestar method would penalize Class Counsel for being efficient and settling early, the Court need not conduct the lodestar cross-check.[6] Nonetheless, if

---

[6] Most courts across the country do not perform the crosscheck.  See Brian T. Fitzpatrick, *Empirical Study, An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L.

the Court requires it do so, Class Counsel will supplement this Motion with further information to allow the Court to conduct the lodestar cross-check.

  **g.  Awards in similar cases.**

  The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. *See Brumley v. Camin Cargo Control, Inc*., No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) (approving fee of one-third of the common fund) (*citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 822 (3d Cir. 1995)). *See also Blofstein v. Michael's Family Restaurant, Inc*., at *10 (E.D. Pa. 2019) (Surrick, J.) (approving fee of one-third of settlement fund); *Stagi v. Nat'l R.R. Passenger Corp*., 880 F. Supp. 2d 564, 571 (E.D. Pa. 2012) (citing cases and noting attorneys' fees in the Eastern District of Pennsylvania range between 19% and 45% in common fund cases); *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvani*a, 192 F. Supp. 2d 369, 378 (W.D. Pa. 2002) (same). Indeed, District Courts in this Circuit routinely approve requests for fees in the amount of approximately one-third of the settlement fund. *See, e.g., Tompkins v. Farmers Ins. Exch.*, No. 5:14-CV-3737, 2017 WL 4284114, at *10 (E.D. Pa. Sept. 27, 2017) (approving attorneys' fees equaling 35% of the common fund); *Rouse v. Comcast Corp*., CIV.A. 14-1115, 2015 WL 1725721, at *14 (E.D. Pa. Apr. 15, 2015) (same); *McGee v. Ann's Choice, Inc*., No. CIV.A. 12-2664, 2014 WL 2514582, at *6 (E.D. Pa. June 4, 2014) (awarding attorneys' fees representing 32.7% of the settlement fund); *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 150 (E.D. Pa. 2000) (concluding "an award of one-third of the Settlement fund is reasonable in consideration of other courts' awards"); *Williams*

---

Stud. 811, 833 (2010), (finding that only 49% of courts consider lodestar when awarding fees with the percentage method); Theodore Eisenberg et al., *Attorneys' Fees in Class Action Settlements: 2009-2013*, 92 N.Y.U. L. Rev. 937, 945 (2017) (finding percent method with lodestar crosscheck used 38% of the time versus 54% for percent method without lodestar crosscheck). *See also Farrell v. Bank of Am., N.A*., 327 F.R.D. 422, 432 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A*., 827 F. App'x 628 (9th Cir. 2020), *denying cert Threatt v. Farrell*, No. 20-1349, 2021 WL 4507641 (U.S. Oct. 4, 2021) (recognizing that in the Ninth Circuit, which is similar to the Third Circuit in that the lodestar cross-check is discretionary, that it was appropriate in that case for the district court to decline to apply the lodestar cross-check).

*v. Aramark Sports, LLC*, No. CIV.A. 10-1044, 2011 WL 4018205, at \*10 (E.D. Pa. Sept. 9, 2011) (noting study of Third Circuit class action fee awards found average attorney's fees percentage was 31.71% and median award was 33.3%).

Notably, courts approving attorneys' fee requests in other bank fee settlements have approved awards equal to the award requested here. Indeed, the requested 33.33% is in line with what has been routinely approved by judges who have approved similar bank fee class actions settlements over the last two decades. In *Morris*, the court awarded 33.33% of the settlement fund. *Morris*, No. 3:18-CV-157-RJC-DSC, Dkt. 93. Since 2010, numerous other courts have awarded percentage-of-recovery-based fees in insufficient funds fee class actions (based on different—but arguably less difficult—theories of liability):

| Overdraft Fee Case Name | Percentage-of-the-Fund Awarded |
|---|---|
| *Lopez v. JPMorgan Chase Bank, N.A.*, No. 1:09-MD-02036-JLK (S.D. Fla.) | **44%** of value of settlement, which includes 30% of $110 million cash fund and 30% of value of practice changes |
| *Farrell v. Bank of Am., N.A.*, 327 F.R.D. 422 (S.D. Cal. 2018), *aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020) | **40%** of 37.5 million common fund |
| *Jacobs v. Huntington Bancshares Inc.* No. 11-cv-000090 (Lake County Ohio) | **40%** of value of settlement, which includes 40% of $8.975 million and 40% of $7 Million in debt forgiveness |
| *Kelly v. Old National Bank*, No. 82C01-1012-CT-627 (Vanderburgh City., Ind.) | **40%** of $4.75 million |
| *Nelson v. Rabobank, N.A.*, No. RIC 1101391 (Cal. Supr.) | **35.2%** ($750k fee includes % of practice changes) |
| *Molina v. Intrust Bank, N.A.*, No. 10-CV-3686 (Dist. Ct. Ks.) | **33%** of $2.7 million |
| *Hawkins et al v. First Tenn. Bank, N.A.* (Cir. Ct. Tenn.) | **35%** of $16.75 million |
| *Dasher v. RBC Bank (USA)*, No. 1:09-MD-02036-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) | **35%** of $7.5 million |
| *Swift v BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) | **35%** of $24 million |
| *Casto v. City National Bank, N.A.*, No. 10-C-1089 (Cir. Ct. W.Va.) | **33%** of $3 million |
| *Schulte v. Fifth Third Bank*, No. 09-cv-6655 (N.D. Ill.) | **33%** of $9.5 million |
| *Johnson v. Community Bank, N.A.*, No. 12-cv-01405-RDM (M.D. Pa.) | **33%** of $2.5 million |
| *Bodnar v. Bank of America*, No. 5:14-cv-03224-EGS (E.D. Pa.) | **33%** of $27 million |

| | |
|---|---|
| *Holt v. Community America Credit Union*, No. 4:19-CV-00629-FJG (W.D. Mo.) | **33.33%** of 3.078 million |
| *White v. Members 1st Federal Credit Union*, Case No. 1:19-cv-00556-JEJ (W.D. Pa.) | **33.33%** of $910,000.00 |
| *Figueroa v. Capital One*, No. 3:18-cv-00692-JM-BGS (S.D. Cal.) | **33.33%** of $13 million |
| *Liggio v. Apple Federal Credit Union*, No. 1:18-cv-01059-LO-MSN (E.D. Va.) | **33.33%** of $2.7 million |
| *Smith et al v. Fifth Third Bank*, No. 1:18-cv-464 (S.D. Ohio) | **33.33%** of $5.2 million |
| *Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103-LO-MSN, 2019 WL 3843064 (E.D. Va.) | **33.33%** of $16 million |
| *Thompson v. Cmty. Bank, N.A.*, No. 8:19-CV-919, 2021 WL 4084148 (N.D.N.Y. Sept. 8, 2021) | **33.33%** of $3.46 million |
| *Baptiste v. GTE Federal Credit Union d/b/a GTE Financial*, No. 20-CA-002728 | **33.33%** of $975,000.00 |

The awards in many of the above settlements either did not include a Practice Change like that obtained here, or, if they did, the court included the value of that change in calculating the award. Here, the Practice Change value lowers the attorneys' fees sought to approximately 9.5% of the value of the Settlement. Thus, the requested fee award in this case is on par with (or less than) the fee awards approved in the above, comparable bank fee class action cases.

As just one recent example, Judge O'Grady recently awarded an attorneys' fee of 33.33% of the common fund in a similar bank fee case. *Lambert v. Navy Federal Credit Union*, No. 1:19-cv-00103-LO-MSN, ECF No. 61 (E.D. Va. Apr. 8, 2021) (awarding 33.33% of $16 million settlement fund because "Class Counsel's [which included two of the same firms representing the Class here] expertise, perseverance, and skill allowed them to obtain an excellent result for the Settlement Class."). Notably, the settlement in that case did not require the defendant to stop the challenged fee assessment practice.

**3.  Class Counsel's Litigation Costs Incurred are Reasonable and Should Be Reimbursed from the Common Fund**

Class Counsel is also entitled to an award of litigation costs reasonably incurred. Class Counsel has incurred $8,187.35 in costs litigating this case, primarily for mediation fees, court fees, and travel costs. Joint Decl. ¶ 63. Courts regularly award litigation expenses in addition to

attorneys' fees in class action cases. *See e.g. In re Automotive Refinishing Paint Antitrust Litigation*, 2008 WL 63269, at *7 ("We have stated that "there is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating this case. . . .") (citation omitted). "Moreover, '[a]ttorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund.'" *Id*. (*quoting In re Aetna Inc. Sec. Litig*., MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001)). Class Counsel's costs here were all reasonably incurred in pursuing this litigation, and thus should be awarded.

In addition, the Court should approve the payment of Settlement Administration Costs for the reasonable costs of the Notice Plan and administering the Settlement. See *Story v. SEFCU*, No. 1:18-CV-764 (MAD/DJS), 2021 WL 736962, at *7 (N.D.N.Y. Feb. 25, 2021) (awarding settlement claims administrator's fees and costs in overdraft fee class action settlement); *Gates v. Rohm And Haas Co*., CIV.A.06-1743, 2008 WL 4078456, at *11 (E.D. Pa. Aug. 22, 2008) (approving $500,000 in Settlement Administration Costs). These costs are necessary to carry out the Notice Plan, mail settlement checks, and otherwise facilitate the Settlement. Joint Decl. ¶ 64.

IV.    **<ins>CONCLUSION</ins>**

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) certify the Settlement Class for settlement purposes, pursuant to Federal Rule of Civil Procedure Rule 23(a) and 23(b)(3); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) award the Plaintiff $5,000.00 for serving as Class Representative; (6) award Class Counsel $2,666,666.66 for attorneys' fees and $8,187.35 for costs, (7) approve payment of the Settlement Administration Costs out of the Settlement Fund to the Settlement Administrator; and (8) enter Final Judgment dismissing the Action and reserving jurisdiction over the Settlement implementation. A proposed Final Approval Order is attached as ***Exhibit D***.

Dated: June 9, 2023

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow (pro hac vice)
Jonathan M. Streisfeld (pro hac vice)
KOPELOWITZ OSTROW P.A.
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
954.525.4100
ostrow@kolawyers.com
streisfeld@kolawyers.com

Jeffrey Kaliel (pro hac vice)
KALIELGOLD PLLC
1100 15th Street N.W., 4th Floor
Washington, D.C. 20005
202.350.4783
jkaliel@kalielpllc.com

Kenneth J. Grunfeld (PA 84121)
GOLOMB SPIRT GRUNFELD, P.C.
1835 Market Street, Suite 2900
Philadelphia, PA 19104
215-985-9177
kgrunfeld@golomblegal.com

*Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 9, 2023, the foregoing document was filed electronically on the CM/ECF system, which caused all CM/ECF participants to be served by electronic means.

*/s/ Jeff Ostrow*
Jeff Ostrow