IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN CHECCHIA, on behalf of himself and all others similarly situated, | : : : : : : : : : : : | CIVIL ACTION<br><br>NO. 21-3585 |
| Plaintiff, | | |
| v. | | |
| BANK OF AMERICA, N.A., | | |
| Defendant. | | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                    **SEPTEMBER 21, 2023**

Presently before the Court is Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Application for Service Award, Attorneys' Fees, and Costs. ("Mot.," ECF No. 21.) For the following reasons, Plaintiff's Motion will be granted.

**I. BACKGROUND**

    **A. Litigation Background**

In this class action, Plaintiff Steven Checchia brings claims on behalf of himself and others similarly situated against Defendant Bank of America, N.A. (BANA). Plaintiff alleges that BANA breached its account agreements, violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1-1, *et seq.*, and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, by charging non-sufficient funds fees (NSF Fees) and overdraft fees (OD Fees) on checks that were re-presented for payment after having initially been rejected for non-sufficient funds. (Compl., ECF No. 1-1.)

BANA removed the case from the Court of Common Pleas of Philadelphia County to this Court on August 11, 2021. (Not. of Removal, ECF No. 1). The Parties extended the deadlines for BANA to respond to Plaintiff's Complaint and for Plaintiff to file a motion to remand while the parties participated in early mediation and engaged in informal discovery, including data analysis that now forms the basis of the proposed class settlement. On February 18, 2022, following discovery, the Parties mediated the matter before the Hon. Diane M. Welsh (Ret.), and agreed on settlement terms. The parties filed a notice of settlement on March 11, 2022. (ECF No. 11.) On June 9, 2022, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Settlement and For Certification of Class. (ECF No. 17.) On February 16, 2023, the class settlement was preliminarily approved. *Checchia v. Bank of America, N.A.,* No. 21-3585, 2023 WL 2051147 (E.D. Pa. Feb. 16, 2023).

### B.     Notice Period and Class Participation

Pursuant to the Settlement Agreement, prior to May 25, 2023, Class Counsel sent the Court-approved Class Notice to individuals who paid and were not refunded an NSF Fee and/or OD Fee in certain situations from May 19, 2017, through the preliminary approval date. Notice was mailed or emailed to 358,248 Class Members. (Mot. at 4.) In addition, the Settlement Administrator established a website containing detailed information about the lawsuit and the settlement. (*Id.* at 5.) Class Members could also call a toll-free telephone number for this information. (*Id.*) At least 90 percent of the identifiable Settlement Class Members received direct notice of the Settlement. (*Id.*) Of those who received notice, none of the Settlement Class Members objected (*id.* at 6), and there were only six opt-outs at the time of the Final Fairness Hearing.

      **C.**      **Settlement Agreement**

Under the proposed Settlement Agreement, BANA agrees to (1) pay a total Settlement Amount of $8,000,000 and (2) continue to not assess the disputed fees for at least five years (the "Practice Change"). (Settlement Agreement and Release ¶¶ 1.36, 1.47, 2.1, 6.1.) The Settlement Fund will be distributed to the Settlement Class—those who paid and were not refunded an NSF Fee and/or OD Fee in certain situations from May 19, 2017, through the preliminary approval date—and will be used to pay for settlement administration costs, attorneys' fees and potential costs awarded to class counsel, and any service award this Court might award to the class representative. (*Id.* ¶¶ 1.13, 3.1, 6.3, 6.6, 7.) Payments to Settlement Class Members will be made proportionately based on BANA's data on who was assessed the fees. (*Id.* ¶ 7.1.) Any excess funds remaining after 240 days will be distributed to those Settlement Class Members who cashed their initial settlement checks or received a credit to their accounts. (*Id.* ¶ 6.7.) Any remaining funds will be distributed to a consumer protection or financial services organization with no reversion to BANA. (*Id.* ¶ 7.4.)

Class Counsel requests $2,666,666.66 in attorneys' fees, $8,187.35 for litigation costs, and a $5,000 service award for Plaintiff. (Mot. at 6). BANA does not oppose these requests. (*Id.*).

**II.**      **CLASS CERTIFICATION**

In granting final approval of a class settlement, a court must answer two questions: (1) whether the class is appropriate for certification under the rules of Fed. R. Civ. P. 23(a) and (b), and (2) whether the class settlement is "fair, reasonable, and accurate." Fed. R. Civ. P. 23(e)(2). We begin with the former inquiry.

Rule 23(a) requires a class representative to demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 199-200 (E.D. Pa. 2014). In addition, the class must fall into one of the three categories of class actions contained in Rule 23(b). *Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 247 (E.D. Pa. 2011).

The class in this case is categorized under Rule 23(b)(3), meaning it can be maintained only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The elements of Rule 23(b)(3) are known as the predominance and superiority requirements, respectively, and consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). The Third Circuit has also held that a class certified under Rule 23(b)(3) must be "ascertainable," meaning "(1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.,* 784 F.3d 154, 163 (3d Cir. 2015) (internal quotation marks omitted).

A.      **The Requirements of Rule 23(a)**

In order to certify a class, Rule 23(a) requires the class representative to demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Nat'l Football League,* 301 F.R.D. at 200. We find that Plaintiff's proposed class meets these elements.

1.      *Numerosity*

While there is no minimum number of plaintiffs required to satisfy the numerosity requirement, it is generally understood that a potential number of plaintiffs greater than 40 is enough to maintain a class action. *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the Settlement Class consists of approximately 360,000 BANA accountholders, (Mot. at 15), easily satisfying the numerosity requirements.

2.      *Commonality*

The commonality element requires that "the proposed class members share at least one question of fact or law in common with each other." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527-28 (3d Cir. 2004). This question of fact or law must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Nat'l Football League*, 301 F.R.D. at 200 (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2014)).

There is no doubt here that there are multiple questions of law and fact that are common to the Settlement Class. Whether BANA charged fees to the Class Members, and was authorized

5

to do so, is a common question of law and fact. A "common course of conduct" resulting in assessed banking fees satisfies the commonality requirement. *See Krimes v. JPMorgan Chase Bank, N.A.*, No. 15-5087, 2016 WL 6276440, at *4 (E.D. Pa. 2016) ("Each class member could access their funds upon release only through a BOP debit card. Each was also subject to the same fees Chase charged in connection with the cards. Also, Chase's principal defenses, such as government immunity, are common to all class members.").

       3.       *Typicality*

The class representative's claims must be "typical" of the claims of the class, meaning that "the named plaintiffs have incentives that align with those of the absent class members so as to assure that the absentees' interests will be fairly represented." *In re Nat'l Football League,* 301 F.R.D. at 200 (quoting *Baby Neal v. Casey,* 43 F.3d 48, 57-58 (3d. Cir. 1994)). "The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees." *Baby Neal,* 43 F.3d at 57. "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirements irrespective of the varying fact patterns underlying the individual claims." *Id.* at 58.

Plaintiff's claim here is "based on the same legal theories . . . and arise[s] from the same alleged wrongful conduct" as the claims of the class. *In re Nat'l Football League,* 301 F.R.D. at 201. Indeed, it appears that Plaintiff's interests are perfectly aligned with those of the other class members, and we can envision no circumstance where "the legal theories of the named plaintiffs potentially conflict with those of the absentees . . . ." *Baby Neal,* 43 F.3d at 57. Furthermore, any minor factual differences, if they exist, in how the Class Members were assessed the

6

disputed fees pale in comparison to "relatively pronounced factual differences" in other cases which still did not preclude a finding of typicality. *See id.* at 58 (citing *De La Fuentes v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Plaintiffs claim is typical of the class.

        4.      *Adequacy of Representation*

Rule 23(a)(4) requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). To assess the adequacy of the class representative, courts first inquire into the "qualifications of counsel to represent the class," and second, assess whether there are "conflicts of interest between named parties and the class they seek to represent." *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 312 (3d Cir. 1998).

Class Counsel is more than qualified to represent the class, having extensive experience in class action litigation, including in cases specifically concerning NSF and OD fees. (Prelim. Approval Mot., Exhibit B, Ostrow Decl. ¶¶ 35-36, ECF No. 17-2.) This case is unique in that it follows *Morris et al v. Bank of America, N.A.*, No. 18-157 (W.D.N.C), which concerned whether BANA was authorized to assess multiple NSF and/or OD fees on electronic transactions by re-processing them after they were initially rejected for insufficient funds. Class Counsel in the instant matter also litigated *Morris*, and therefore not only have general class action experience but also the benefit of litigating similar issues in that prior case, which included "tens of thousands of pages of documents and relevant information" and "internal documents related to BANA's NSF Fee and OD Fee practices including Account agreements, marketing and internal studies on NSF/OD Fees, customer complaints about the challenged fees, and transactional

database excerpts showing how much money BANA made from the challenged fees." (Prelim. Approval Mot. at 4, ECF No. 17.)

In addition, Plaintiff's claim is purely coextensive with those of the proposed class, which has equal interest in the relief offered by the Settlement Agreement. We conclude that there are no conflicts of interest between the named parties and the Class Members.

### B.     The Requirements of Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), a class must also fall within one of the categories outlined by Rule 23(b). These categories include, *inter alia*, that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Warfarin,* 391 F.3d at 533-34.

Plaintiff here satisfies the predominance inquiry because questions of law and fact common to the Settlement Class substantially outweigh any individual issues. The claims of all the class members are based on the same legal theories and uniform conduct of BANA. It is difficult to imagine any individual issues that would outweigh these common claims.

In addition, resolution of these claims in a class action is superior to individual lawsuits because it promotes consistency and efficiency of litigation. It is also the only feasible way for many class members to litigate their presumably relatively small claims. *See Krimes,* 2016 WL

6276440, at *5 ("Since the individual claims are relatively small, without the class, individuals might lack incentive to pursue their claims.").

The Third Circuit also requires that a class certified under Rule 23(b)(3) be ascertainable. "The ascertainability requirement is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd,* 784 F.3d at 163.  We are satisfied that the method implemented by the class administrator of using BANA business records to identify those who were assessed fees during the Class Period was a suitably objective, reliable, and feasible method of determining the class in this case.  We therefore find that the class meets all requirements of Rule 23(b)(3).

## III. FAIRNESS OF THE SETTLEMENT AGREEMENT

After determining whether a proposed settlement class meets the criteria of Rule 23(a) and (b), the court must find that it is "fair, reasonable, and accurate." Fed. R. Civ. P. 23(e)(2). In *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975), the Third Circuit developed a nine-factor test for making such a determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157 (alterations omitted).  Subsequently, the Court noted that "it may be useful to expand the traditional *Girsh* factors," and instructed district courts to consider the following, if appropriate:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential,* 148 F.3d at 323. While a court "must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)," the *Prudential* factors are merely "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 350 (3d Cir. 2010).

    A.    **The *Girsh* Factors**

While preliminary approval establishes an initial presumption of fairness, a class action settlement may not be finally approved under Rule 23(e) without a determination that it is "fair, reasonable and adequate." *See* Fed. R. Civ. P. 23(e)(1)(A). The Third Circuit has stressed that "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (citations and quotations omitted). Moreover, "in cases such as this, where settlement negotiations precede class certification and approval for settlement and certification are sought simultaneously, the Third Circuit requires district courts to be even 'more scrupulous than usual' when examining the fairness of the proposed settlement." *Murphy v. Eyebobs, LLC,* 638 F. Supp. 3d 463, 480 (W.D. Pa. 2021) (citing *In re General Motors*, 55 F.3d

at 805). We find that the settlement here satisfies the nine-factor *Girsh* test developed by the Third Circuit to ensure that it is fair, reasonable, and adequate.

    1.    *The complexity, expense, and likely duration of the litigation*

The court must first consider "the probable costs, in both time and money, of continued litigation." *In re General Motors,* 55 F.3d at 812. "When the Court finds, after balancing the Proposed Settlement against the anticipated expense, complexity, and time of possibly achieving a more favorable result through litigation, that the litigation would likely be expensive, complex, and time-consuming, this factor is found to favor settlement." *Murphy,* 638 F. Supp. 3d at 482.

There can be no doubt that continued litigation in this case would be expensive, complex, and time consuming. As Plaintiff notes, "[t]he claims and defenses in this Action are complex, as is clear by Class Counsel's efforts in the sister *Morris* case, which was hard fought for years, with numerous depositions, third party discovery, and hundreds of thousands of pages of documents produced." (Mot. at 12.) Most notably, Plaintiff argues that proof of damages in this case would involve retention of experts in data analyses, marketing, and banking to compile reports and testify in depositions and at trial. (*Id.*) Certainly, it is self-evident that continued litigation to prove harm and damages to 358,248 class members would be an expensive burden on both parties. The complexity and expense of further litigation favors settlement.

    2.    *Reaction of the class to the settlement*

This *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential,* 148 F.3d at 318. "In gauging support, courts look at the number of objectors as well as opt-outs." *Murphy,* 638 F. Supp. 3d at 483. There are no objections in this case, and only six of the 358,248 class members, or .00001675 per cent, have opted out.

11

Clearly, the majority of the Class supports the settlement. *See In re Prudential,* 148 F.3d at 318 (affirming district court's finding that a .2 per cent opt out rate was "truly insignificant").

        3.       *The stage of the proceedings and amount of discovery completed*

Before the court can approve a class action settlement, "[t]he parties must have an adequate appreciation of the merits of the case . . . ." *In re Prudential*, 148 F.3d at 319. The court must "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant Corp. Litig.,* 264 F.3d 201, 235 (3d Cir. 2001). As discussed above, this case was preceded by *Morris*, during which the parties exchanged "tens of thousands of pages of documents and relevant information" and "internal documents related to BANA's NSF Fee and OD Fee practices including Account agreements, marketing and internal studies on NSF/OD Fees, customer complaints about the challenged fees, and transactional database excerpts showing how much money BANA made from the challenged fees." (Prelim. Approval Mot. at 4.) That discovery is directly relevant to the claims in this related case, and is more than suitable to provide the parties with an "adequate appreciation for the merits of the case." *In re Prudential*, 148 F.3d at 319.

        4.       *The risks of establishing liability and damages*

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of the immediate settlement." *In re Prudential,* 148 F.3d at 319. In evaluating these factors, "a court should not conduct a mini trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel." *In re Lucent Techs, Inc. Sec. Litig.,* 307 F. Supp. 2d 633, 644-45 (D.N.J. 2004). Here, Plaintiff and Class Counsel submit that they "are confident in the strength of their case, but they are also

12

pragmatic in their awareness of the various defenses available to BANA, and the risks inherent to litigation," including "that the Court or a jury might find BANA's Account agreement language permits defenses that the contract permitted BANA to charge the challenged Class Fees, and that BANA sufficiently disclosed its multiple fee practice for checks that were re-presented such that those practices were not deceptive or misleading." (Mot. at 11.)  Plaintiff cites several cases in other districts where courts have dismissed overdraft fee cases at the pleading stage for this reason.  (*Id.* at 11 n.3).  *See Prudential,* 148 F.3d at 319-20 (relying on "a similar life insurance sales practice case in Alabama state court in which the judge overturned a substantial jury verdict against Prudential.")  Plaintiff also notes that, "because BANA's practices regarding Class Fees had been in place for many years, the Settlement Class (and the Class Representative) faced potential statute of limitations, estoppel, and waiver defenses, among other affirmative defenses that would be pled." (*Id.* at 11).  Ultimately, we agree that "but for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery."  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).

     5.     *The risks of maintaining a class action through trial*

This *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action where to proceed to trial." *Warfarin,* 391 F.3d at 537.  Under Rule 23, the court may decertify or modify a class if it proves to be unmanageable. *In re School Asbestos Litigation,* 789 F.2d 996, 1009 (3d Cir. 1986).  Thus, a class that would pose intractable management problems if certified for litigation weighs in favor of settlement.  Given the class size of nearly 360,000 members here, we find that "if this Court were to certify the classes for litigation purposes, a significant risk exists that intractable management problems would result due to the

size and scope of the class[].ˮ *Murphy,* 638 F. Supp. 3d at 485.  This weighs in favor of settlement.

      6.     *The ability of Defendants to withstand a greater judgment*

The court must also consider "whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant,* 264 F.3d at 240.  However, this factor is most relevant where the settlement "is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.,* 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011).  In other words, "[t]his factor comes into play where the Parties relate that they have settled for below-value amount because of the concerns over the defendant's inability to pay, or where a court is concerned that a settlement is unduly small in light of the misconduct alleged and the defendant's demonstrable ability to pay much more." *Murphy,* 638 F.Supp.3d at 485 (internal quotations omitted).  Here, the Parties agree that the $8,000,000 settlement is approximately 40 per cent of the maximum recoverable amount had they prevailed at trial, and Plaintiff cites extensive caselaw indicating that this is on par with other bank fee settlements.  (Mot., at 13 n.4).  Moreover, this is before considering the future savings from Defendant's agreement to cease charging the disputed fees, which is estimated to be worth an additional $20,000,000.00.  (*Id.* at 6).  Accordingly, we are not concerned that the settlement amount is "less than would ordinarily be awarded" or that the Parties "have settled for a below-value amount because of . . . defendant's inability to pay" and Defendant's ability to withstand a greater judgment is irrelevant.  *See Reibstein,* F. Supp. 2d at 254 ("the Court has not been presented with any reason to believe that Defendants face any financial instability and therefore believes this factor is largely irrelevant for the purpose of resolving the instant motion."); *McIntyre v. RealPage, Inc.,* No. 18-3934, 2023 WL 2643201, at *2 n.4 (E.D. Pa. Mar.

24, 2023) ("[A settlement less than that ordinarily awarded] does not appear to be an issue here, so this factor is neutral.")

> 7. *The range of reasonableness of the settlement fund in light of the best possible recovery and litigation risks*

As discussed above, the Settlement Fund amounting to 40 per cent of the Class's maximum recoverable amount at trial is on par with recovery rates in other similar class action settlements. (Mot. at 13 n.4). When combined with the value of Defendant's agreement to cease charging OD and NSF fees, the total settlement value far exceeds this amount. Given the risks of continuing litigation, such as class management issues and Defendant's potential defenses, we find that this settlement is reasonable.

### B. The *Prudential* Factors

Unlike the *Girsh* factors, the *Prudential* factors need not be considered exhaustively and "are merely illustrative of additional factors that may be useful." *Murphy,* 638 F. Supp. 3d at 486.

We find that the settlement is clearly fair and reasonable under the *Girsh* factors. Therefore, we do not find that a factor-by-factor analysis of *Prudential* is necessary. However, we note that several of the *Prudential* factors weigh in favor of settlement, including that there has been extensive discovery on the merits, which, along with the previous litigation in *Morris*, enabled appropriate assessment of the probable outcome of this case; that Class Members were afforded the right to opt out of the Settlement; and that provisions for attorneys' fees are reasonable (discussed at length *infra*). *See Prudential,* 148 F.3d at 323.

### III. SERVICE AWARD, ATTORNEYS' FEES, AND COSTS

The parties have agreed to a $5,000.00 Service Award for the Class Representative, $2,666,666.66 for attorneys' fees (representing 33.33 percent of the cash Settlement Amount),

$8,187.35 for litigation costs, and approval of payment of Settlement Administration Costs from the Settlement Fund. We find all of these requests to be reasonable.

### A.   Service Award

Plaintiff requests a Service Award of $5,000.00 for the Class Representative. While "[t]here is no evidence that [the Class Representative] took on any personal risks through their role, in this action . . . it is undeniable that the class action itself brought benefits to the class, and it is quite likely that the [Class Representative's] meetings with Class Counsel helped counsel investigate and litigate this matter." *Johnson v. Cmty. Bank, N.A.,* No. 12-1405, 2013 WL 6185607, at *6 (M.D. Pa. Nov. 25, 2013). Moreover, $5,000.00 is well within the range of awards that courts have determined to be reasonable. *See, e.g., id.* (the Court does not believe that the proposed total award of $10,000 (or 0.4 ) of a $2,500,000 settlement fund is unreasonable.") Based upon the time and effort expended by Representative Plaintiff in bringing this action and obtaining benefits for the Class, we are satisfied that the award is reasonable.

### B.   Attorneys' Fees

Class Counsel requests $2,666,666.66 for attorneys' fees, or 33.33 percent of the cash Settlement Amount. "In cases such as this, where class members recover from a single common fund, the Third Circuit favors the percentage-of-recovery method in evaluating the fairness of attorneys' fees." *Graudins v. Kop Kilt, LLC,* 2017 WL 736684 (E.D. Pa. Feb. 24, 2017); *see also In re Prudential,* 148 F.3d at 333 ("The percentage-of-recovery method is generally favored in cases involving a common fund, and is designed to allow courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." (citation and internal quotation marks omitted)). Courts applying the percentage-of-recovery method must weigh seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and (7) awards in similar cases.

*Graudins,* 2017 WL 736684 at *10. "These fee award factors need not be applied in a formulaic way and in certain cases, one factor may outweigh the rest." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005). Applying them here, we find the requested Attorneys' Fees and Costs to be reasonable.

Regarding the first factor, the Settlement Fund is $8,000,000.00 to be distributed to 358,248 Class Members on a *pro rata* basis. As discussed, this relief is 40 per cent of the parties' estimate of the maximum recoverable damages in this case, which is on par with settlements in similar cases. Moreover, the parties estimate the Practice Change to be worth an additional $20,000,000. *See Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (practice change generates benefits far "beyond the cash settlement fund."). The Settlement thus provides an estimated $28,000,000.00 worth of value to every class member who can be identified using BANA's own business records, and this factor therefore weighs in favor of approving the requested attorneys' fees.

With regard to the second factor, there have been no objections to the Settlement terms or the fees requested. This factor also weighs in favor of approving the requested fees.

Third, we have no doubts regarding the skill and efficiency of the attorneys involved. Class Counsel have substantial knowledge and experience in litigating class actions, including within the specialized field of banking litigation. (Joint Decl. ¶¶ 2-6, 15, 53, Exh. 1-3, ECF No. 21-2.) Class Counsel have successfully recovered hundreds of millions of dollars for classes in other consumer class actions against major corporations, experience which allowed them to

efficiently prosecute this case based on a novel legal theory. (*Id.* at ¶¶ 7-10, 22). Moreover, there is no reason to doubt the advocacy of BANA's counsel, McGuire Woods LLP, a well-respected and nationally recognized law firm, which gives us more reason to trust that Class Counsel had to skillfully and efficiently negotiate a fair settlement. This factor weighs in favor of approval of fees and costs.

As for the fourth factor, while the parties do not submit that the litigation in this case was notable for its duration, there is no doubt that addressing the complex claims at issue here required a high degree of specialized knowledge. As Plaintiff notes, this is a novel theory of liability subject to continuously developing law following *Morris*, and navigating this uncertainty to achieve a favorable outcome for the class required experience and skill. (Mot. at 24). The fourth factor is at worst neutral, given the fact that *Morris* gave the parties a head start in the litigation for the instant case; however, we find that the complexity of the matter shifts the weight of this factor in favor of granting the requested Attorneys' Fees and Costs.

Fifth, there was an obvious risk of nonpayment given that Class Counsel took this case on a contingent basis. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) ("Class Counsel undertook this case on a purely contingent basis at significant risk.") (citing *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 309 (E.D. Pa. 2003) ("Any contingency fee includes a risk of non-payment")). We have already noted the substantial risk of dismissal prior to trial or an unfavorable verdict, which would have resulted in no compensation for Class Counsel. This factor also weighs in favor of approval.

The sixth factor asks us to consider the amount of time devoted to the case by counsel. However, the Third Circuit has recognized that such a "lodestar" analysis is not necessary in cases such as this, where attorneys' fees are reasonably requested based on a percentage of a

common fund. *See In re Cendant Corp.*, 264 F.3d at 284-85 ("The lodestar cross-check . . . is very time consuming. Thus, while the Court should in the first instance test the presumption, if challenged, by the *Gunter* factors, it may, if necessary, utilize the lodestar cross-check.") Indeed, a lodestar check could discourage the very type of efficient resolution of complex class actions that occurred here. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) ("one purpose of the percentage method of awarding fees—rather than the lodestar method, which arguably encourages lawyers to run up their billable hours—is to encourage early settlements by not penalizing efficient counsel…." (citations and quotation marks omitted)). We find this factor to be neutral, and it certainly does not outweigh the remaining factors.

Finally, we look to awards in similar cases. We are persuaded by Plaintiff's reference to the abundant caselaw within our Circuit recognizing that attorneys' fees tend to range from 19 percent to 45 percent of the settlement fund when the percentage-of-recovery method is used. (Mot. at 26 (collecting cases).) *See, e.g., Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 315 (E.D. Pa. 2012) ("Within the Third Circuit, courts have approved attorneys' fees ranging from 19 percent to 45 percent of the settlement fund as reasonable.") Even more convincing, Plaintiff notes that a 33.33 percent request is in line with what has been routinely approved in similar bank fee class actions settlements over the last two decades, including in *Morris*. (Mot. at 27.) Indeed, of the 22 bank fee class actions Plaintiff cites, in fourteen of them the court awarded Attorneys' Fees amounting to 33.33 percent of the common fund, and in the remaining eight the court granted a *higher* percentage. (*Id.* at 27-28 (collecting cases).) Moreover, the settlements in many of these cases did not include a practice change, which the Parties here value at an additional $20,000,000.00, and the cases were based on less complicated legal theories. In sum, the weight

of authority strongly supports approval of Attorneys' Fees in the amount of 33.33 percent of the $8,000,000.00 Settlement Fund.

### C.     Litigation and Settlement Administration Costs

Class Counsel also seek reimbursement of litigation costs in the amount of $8,187.35. It is well-settled that "[a]ttorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable expenses from the fund." *In re Auto. Refinishing*, 2008 WL 63269, at *7 (alteration in original). The same is true of reasonable settlement administration costs. *See Gates v. Rohm and Haas Co.,* No. 06-1743, 2008 WL 4078456, at *11 (E.D. Pa. Aug. 22, 2008) (approving $500,000 in Settlement Administration Costs). We therefore grant the request for reimbursement of litigation and settlement administration costs.

### IV.    CONCLUSION

For the reasons above, Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Application for Service Award, Attorneys' Fees, and Costs will be granted.

An appropriate Order follows.


                                 **BY THE COURT:**

                                 */s/ R. Barclay Surrick*
                                 **R. BARCLAY SURRICK, J.**